The case is Dorries v. Clemons, 09-410. Are you ready to proceed, fellas? We have Mr. Terlisi and Mr. Cochran, right? I'm Eric Terlisi. May it please the court? Counsel, the home repair and remodeling act brings us before the court today, and I think that could be aptly subtitled the Attorney's Full Employment Act, because it would be hard-pressed to find a statute that has engendered more litigation in a wider spectrum of decisions than the home repair and remodeling act has in its relatively short existence. This court, I think, could use this case as an opportunity to try to lend some clarity to an obviously very confused and confusing statute and area of the law, but I don't think this is really the appropriate case to do that, and I believe that it is fairly clear from this record that, in fact, the home repair and remodeling act has no application to the facts of these cases, this case at all. We have to keep in mind that this case comes before the court on a dismissal with prejudice under 619. I think there are two very fundamental reasons why the home repair act does not even apply to facts in this case. The first is, which we've argued in our brief, is that this simply was not a dwelling. The home repair act applies to a residence, which is defined as a dwelling, or a structure that is a dwelling or intended to be used as a dwelling. Now, it is absolutely, I think, undisputed on this record that when this contract was entered into following this fire, in fact, it was admitted by the defendant home repair that she was not using it as her dwelling, could not use it as her dwelling, could not, in fact, use it as her dwelling or as a residence until this very substantial entire refill of this house was completed. The record is clear that this fire had essentially destroyed this house, had burned away the roof, it was completely exposed to the elements, could not support human habitation in any way, shape, or form, could not keep out the weather, vermin, intruders, anything. And that is not within the common definition of what we think of as a residence or a dwelling. And to suggest, we cited some examples in our brief, but to suggest that an intent today to use a structure as a dwelling, when the contractor finishes the work that you're talking about, there's no implication, there's no language in the Act which suggests that that, in fact, is what a dwelling. Now, I don't think the Act requires necessarily that people be resident in the home at the time the contract is entered into. An example I've used is it would certainly, I think, apply to property that was held as a rental property, currently devoid of tenants that the owner is wanting to do some repairs or remodeling to. That is a residence. That is a dwelling. It is capable of supporting human habitation. This structure was not. So I think this could easily be a one-page opinion by this Court saying the trial court was simply wrong in determining that this statute had any application to these facts at all because a structure incapable of supporting human habitation is not a dwelling, is not a residence, and therefore this Act doesn't apply. Can I, again, Beall v. Gingrich, which is Justice Appleton's opinion, he quotes the General Assembly on the purpose of the law. He's got, according to the floor debates, the Act was designed to deal with contractors that prey on seniors and homeowners after disasters. Wouldn't this be a disaster? Well, this certainly was a disaster for this later. There's no doubt about that. But I think what that language is going to is certainly you can have a disaster which very temporarily has you move to a motel. Your furnace goes out in the middle of winter. A branch falls through the roof and pokes a hole in it. What about a tornado going through Marion, Illinois and knocking out three blocks? They would no longer be homeowners? Well, they would own a structure, but I don't think a structure, I mean the legislature very intentionally used the word dwelling also, and to dwell in a structure means to reside there. At least, I think, a structure. What happens is they haven't showed that they pitched a tent, and they had a tent. Well, then the tent is the dwelling, I think. Then I think the tent is the dwelling. And they put that on the property, waiting for the guy to come put the roof on and what have you. Wouldn't that still be a dwelling? No, I don't think the structure itself, incapable of supporting human habitation, would be a dwelling at that point. As I said, I think the example we use… But you said we ought to look at the degree of damage. The worse the damage is, the less it's a dwelling. Yeah, exactly. I think the example we use is if a tornado completely wipes the house out. There's nothing left but a cinder block foundation. And somebody comes in to bid to rebuild a house from scratch on the existing foundation. And the law should treat unsuspecting homeowners and unscrupulous contractors differently because there's more damage than there would be if there's less damage to the structure? That's the intent of the legislature, to treat them differently? Well, I think the intent of the legislature is, from its express language of the statute, is to protect people in their dwellings or protect dwellings. For example, it very clearly excludes new construction. That same argument could be made. Are we to not protect newly built from unscrupulous, fraudulent contractors? Why are they less deserving of protection? Well, because the legislature made those choices. Is your test, as long as they can continue to live there in some fashion, the act applies? I think that's true. And if they can't live there, then it doesn't apply? I think if the damage is so severe, so extensive, that it's incapable of supporting the human beings to live there for an extended period of time, then it's not a dwelling. So any time that a roof is damaged to the extent that it can't keep water out or snow, it is no longer a dwelling. Well, I think that depends on whether it can be temporarily patched with a tarp and gone overnight or something. But I think when you're talking about something that we're talking about the actual work being done, necessary to turn this structure into a human dwelling, that that removes us. Remember what we're talking about, repair and remodeling of dwellings. Not new construction, not essentially rebuilding a house that has been totally destroyed. I believe that's what the act is aiming for. Perhaps even a more fundamental reason why the act doesn't apply in this case is that, with all the confusion generated by the act, one thing that is absolutely clear, and Your Honors pointed out, this is an act that the clear purpose of is to protect homeowners from unscrupulous and contractors from being taken advantage of. And one thing that is crystal clear on the facts of this case is that could have never happened here. This bid on its face in bold print says it is subject to the terms, conditions, and limits of your insurance policy. There is not one chance ever that the homeowner here could have been taken advantage of. Because every nickel was coming from Mount Carroll Fire Insurance Company, not one nickel from the homeowner here. This was a bid that was extensively negotiated. In fact, the defendant points out in her brief that the negotiations were with the professional adjuster retained by the insurance company. There was no opportunity for fraud or advantage being taken of here. If he had submitted a bill that was in excess of the limits of the insurance, the insurance would not have paid, and she had no liability whatsoever because the bid was specifically subject to those limits and the terms and conditions of that insurance policy. So I think that is a second situation here that, I mean, the whole clear intent of the act cannot go. His total bill in this case was $78,804. There were no add-ons. That's the total bill. That's what the record indicates. The total bill here is $78,000. He's been paid approximately $30,000. He's owed $48,000. And the reason that $48,000. The only reason I ask, it seemed like there was agreements where he did some extra work or did some changes. There's no bill for that. There is no claim in this complaint for any personal liability beyond what the insurance would have paid here. That is correct. We don't know why yet on this record because obviously we haven't had a trial, but the only reason we're here is because Ms. Clements refused to sign the final proof of loss. He was essentially done. He had submitted his final bid. The adjuster had approved it. Everything was ready to go to the insurance company, to Mount Carroll, and Ms. Clements simply refused to sign. I think there's some discussion in her deposition, which wasn't made part of the record here, that she was upset with him for some things, but certainly not for anything to do with him trying to get money out of her pocket. He was waiting for his final check. He would have gone home. We wouldn't be here. She's in her house. She's been in her house. There is no question here of this situation presenting any fraud or advantage against the homeowner. If there was a question of fraud or underbidding and then submitting a higher invoice, that would be the difference between the plaintiff and Mount Carroll Insurance, and this record is clear that that didn't happen here. They monitored the progress throughout. They made the payments. They were ready to make the final payment, and she wouldn't cooperate. Obviously, the insurance company cannot, I mean, Ms. Clements was their customer, not Mr. Dory's, could not make payment without their customer submitting and signing the final proof of loss authorization. So that's why we're here, but I think also should this court decide that the act applies, should the court decide that the act applies even though the clear intent of the act has nothing to do with the facts here, still I think the clear trend of the law and the case law is to apply the intent of the act. I want you to address that. That's what we asked you for the supplemental brief. Okay. And I think, again, as my opening comment said, it would be hard for us to find a statute where you have a wider spectrum of cases, but the first really significant case was the Smith v. Bogart, which simply said, you're out of luck. If you don't comply for the T, if you don't have the sign, the bid, if you don't have proof that you delivered the consumer brochure, no mechanics lien, no contract theory, no quantum merit, you just ate this project. I don't think there's another case that has gone quite that far. In fact, the second district itself very recently, one of the cases that the court asked us to comment on, has said substantial compliance counts. It counts as sufficient to allow a contractor to be covered on either a mechanics lien or a contract theory. In that case, what there was was a detailed bid. And, again, just as exactly as in this case. There was nothing in the record to indicate that there was any fraud or abuse or anything else. But the Miller case, the K. Miller case, which was also cited, where the court said, well, this homeowner was a real estate lawyer with 39 years of experience. He knew the contractor. Therefore, there's no indication of fraud or abuse. And, therefore, we're going to say substantial compliance is sufficient. This case screams out for that same resolution, if the act applies at all. And that is clearly that there's absolutely nothing on this record, at least on the 619 motion. We haven't been to trial yet. But on the 619 motion, it says there's any problem, any complaint, that he didn't do the work, that he overcharged, that there was one shred of abuse or taking advantage of this homeowner. He showed up in March to her burned-out residence, rebuilt it, put $78,000 in it, and we're talking about $48,000. This is the sole proprietor. $48,000 in this economy is enough to put somebody under here. This isn't just a $500 case. This is a significant case, and there's nothing on this record to indicate that he didn't do exactly what he was supposed to do in a timely manner, rebuilt the house, put her back into it, which she is enjoying as we speak here today, presumably. So I think if the court finds that the act applies at all, then I think we'll urge this court to follow along with, I think, the clear trend. How many complaints did you file in this case? Was it one count? No, it was two. It was a contract count and an oral contract count and a mechanics leave foreclosure. Okay. That is one other point, Your Honor. We asked leave in our brief. If the court would find that the act applies, if the court would find under Smith v. Bogart that it eliminates the mechanics and the contract count at a minimum under all the holdings since, I don't think there's any case that said at a minimum, when there's substantial compliance, you can at least have a quantum merit count. And we would ask that. You haven't filed that yet? We have not filed that yet. That's correct. Is the insurance company still in the case? The insurance company is still in the case. So it came up, yeah. I have not crossed the bridge to know whether ultimately if this case would be remanded, if we would win at a trial, if the insurance company has a liability or not. We added that as part of our request. They've already paid the money over to the defendant? No. They have not paid that last money at all to anybody. Okay. Now, whether they owe it or not, it's our position that the mechanics would attach those proceeds. But their argument may well be if she didn't sign the proof of loss, she's our customer and we don't pay until she does. We haven't crossed that bridge yet. But hopefully if we ever get to that point, then that would be the resolution here and there wouldn't be necessity for a sale. I mean, Mount Carroll has never filed any of them in this case suggesting that they're not ready. They wouldn't have been, at least. I don't know what their position is now. Would not have been ready, willing, able, and happy to pay this fine or whatever to get this job done. Thank you. Thank you, Counsel. Mr. Cochran. Good morning, Your Honors. May it please the Court, Counsel, my name is Daniel Cochran and I represent the affilee, Ms. Kimberly Clements, in this case. Your Honors, this Court should affirm the decision of the trial court and dismiss the plaintiff's cause of action on the precedence for three reasons. First, the defendant's home fell within the meaning of residence under the Home Repair and Remodeling Act. Second, the plaintiff should be denied recovery for failing to comply with the plain language of the act, whether it was strictly or substantially, the plaintiff failed to comply. Third, the inconsistent opinions of the third and fourth districts of recent time have shown the necessity of a bright-line rule for using the Home Repair and Remodeling Act as an affirmative defense, as stated in Smith v. Bogart previously. Finally, Your Honors, the plaintiff should be denied a remand by the quantum meriting claim as this claim was waived at the trial court level for not being addressed at that time, and also as it would undermine the purpose of the Home Repair and Remodeling Act by allowing that to occur at this time. My first point, Your Honor, the defendant's home was a residence within the meaning of the act. The Home Repair and Remodeling Act defines a residence as a single-family home or dwelling or multiple-family home or dwelling containing six or fewer apartments, condominiums or townhouses or dwelling units used or intended to be used by occupants as dwelling places. Your Honors, in interpreting a statute, the best evidence of the legislature's intent is the plain language of the act, which must be given its plain and ordinary meaning. However, the Illinois Supreme Court held in the Edelman Trucking v. Illinois Consumer Workers' Compensation Commission that it is entirely appropriate to use the dictionary as a resource to ascertain the meaning of undefined terms. The term intent and repair are undefined in the act. However, Merriam-Webster's dictionary defines intent as to have in mind a purpose or goal. Further, that same dictionary defines repair as to restore or by replacing or putting together what is torn or broken. In March 2007, Your Honors, there was a significant amount of damage to my client's home due to a fire. Yes, that did burn a hole in my client's roof. However, the defendant had in mind the purpose or goal of returning to live in her home. This is why she contacted her insurance company in an effort to have a quality job plan to have her home repaired and restored to where she could finally live in it. Although it may not have been to the quality of a tent, as the appellant would require, it did constitute a home she intended to return to. We're not talking about a bare floor here. We're not talking about breaking dirt or new construction. The purpose of the act, as Your Honor stated about the floor debates, the statute was to cover disaster. This property was a disaster for my client, and she could not live in the home at the time, but she could once it was repaired, as she intended to live there. And after the repairs to the home, which were not done correctly but are not part of the record, my client did return to live in the home. Therefore, Your Honors, it is no stretch of the language of this statute to find that my client's home was a dwelling and a residence within the meaning of this act. She really intended to use it as such, and the trial court was correct to find that her home fell within the meaning of this act and the Home Repair and Remodeling Act is absolutely applicable to the facts of this case. Your Honors, my second point. The plaintiff has failed to comply with this act in any way and therefore should be barred from any type of recovery from my client in this action. Section 15 of the act provides, the contractor shall furnish to the customer for signature a written contractor work order that states with reasonable particularity the materials listed, the cost, and any charge for an estimate. Yet the plaintiff in this case did not furnish the bid to my client. It was furnished to an insurance adjuster who repeatedly refused to give to my client. The insurance adjuster and the insurance company were not the customer. My client was the customer in this case, and therefore the plaintiff had already violated the plain language of the act. Further, the act makes it unlawful for a contractor to remodel, make repairs, or charge for a modeling repair work order before obtaining a signed contractor work order for repairs over $1,000. And what does the act provide as far as your client's remedies? Your Honor, the act does not state a private cause of action for my client unless it's brought under the Consumer Fraud Act. And what do you need for an action brought under the Consumer Fraud Act? My client, the key here would be showing prejudice under the Consumer Fraud Act. Don't you have to show actual damages? Yes, Your Honor. Okay, and where are your actual damages in this case? Your Honor, as they're not part of the record yet, as stated by the plaintiff, we haven't been to a trial and gone through lengthy discovery, there was a significant amount of undone work, work that was done poorly, work that had to be repaired after the original repairs for my client to move back into her home. Which, as you point out, hasn't been brought before the court yet. No, Your Honor, it has not. And presumably it will be if this case is remanded back for a hearing. Yes, Your Honor, it would. So how would your client be penalized in that situation? Your Honor, in this case, the insurance company is not going to cover $78,000 worth of damages. They have explained to my client that they will only cover about $56,000 worth of damages. Therefore, my client is going to, if found against her, will be on the hook for $22,000 worth of damages that she was not negotiated for, she did not take part in, she was never contacted by the plaintiff about, but yet is now going to be on the hook for due to his poor workmanship and inaccurate… Well, that's just contract law there, right? They'd have to prove that that was part of the contract and that your client breached the contract, I guess, right? If they can't prove it, it doesn't make any difference if there's a Home Repair Act or anything. Correct, Your Honor, they could not. However, if that is the case, the Home Repair and Remodeling Act would become a paper tiger. It has no teeth. There have been numerous other courts in this state and others that have held that failure to comply with consumer protection statutes can be used as an affirmative defense, even though those statutes provide no private cause of action. Could an unscrupulous homeowner sit back and know that the brochure wasn't handy to him or her, wait until all the repair is done and say, gotcha? Your Honor, they could. However, that is not the case here. You're saying that they could do that and that would be permissible under the act and there would be nothing that the scrupulous contractor could do in that situation? Your Honor… He'd have to eat it then? He'd have to eat all the amount of work that he did? Your Honor, he would if he failed to do one simple act, get a signature. A signature takes less than five seconds. Isn't that why, getting back to the original question as to the remedies, that you have to show actual damages? Your Honor, to provide a private right of action, my client were to sue the plaintiff in that case. However, in this case, my client is trying to defend being sued for monies she never intended to spend, that she should not be liable for as she was never part of these negotiations, nor let in on them or allowed to be part of them. Did your client report this unscrupulous act to the State's Attorney or the Attorney General's office? I believe she filed a complaint with the Better Business Bureau and I'm not sure if she's contacted the State's Attorney or… Well, that's what the remedies are specified in the act itself, right? Yes, Your Honor, for the criminal remedies. However, my client is attempting to use the Home Repair and Modeling Act as an affirmative defense. I understand that, but if there's a violation of the act, that can be reported to the Attorney General's office or the State's Attorney's office and then they initiate some injunction or nuisance act or whatever they do to get the unscrupulous contractors out of business. Yes, Your Honor, if they were willing to do so. And presumably, it's not whether they're willing, it's whether or not… they're willing to follow what the law is. If they think that they've got a good case, they'll do it. If they think that there's nothing there, they don't do it. How can that happen if you never contacted, if your client never contacted and made the request to the State's Attorney or the Attorney General's office to pursue the remedies that are specified in the act itself? Your Honor, my client had done that to this point as we were still dealing with this litigation and the early stages thereof, and whether she would even need to report to that point, and whether she would need to pursue those actions or whether she would be willing to let this stand. She has no intent to want to criminalize… There's nothing that says that it would be a criminal act. Your Honor, it states that it would be unlawful, and I figure that would follow that. If it's enforced by the State's Attorney or the Attorney General, that this would be a criminal action against them. Well, a nuisance would be unlawful. That doesn't necessarily mean that it would be a crime. Yes, Your Honor, I understand that. However, I figure once the… it hasn't been upheld. I haven't seen a case where a State's Attorney or the Attorney General has attempted to enforce this statute in any way. Yet, as we can see from all the decisions from the second, third… Would I be correct in saying that the two remedies provided by the statute are one, to contact either the Attorney General's office or the State's Attorney's office for some type of… and make a complaint to them? Or two, go under the Consumer Fraud Act and show actual damages? Yes, Your Honor. Are those the two? Are there any other remedies that the act would provide other than those two? No, Your Honor. Those are the only that are plainly stated in the act. However, as well, plainly stated in the act, the plaintiff should have obtained a signed contractual work order prior to beginning this work. It's a very simple action that could have prevented this entire litigation. I realize that, but we're talking about when there is a violation of the act, the aggrieved party has two remedies, you just said. Either to go to the AG's office or the State's Attorney's office and file a complaint there to get this bad practice stopped somehow. Or two, to file an action based upon consumer fraud to show actual damages. None of which has been done by your client in this case. Not at this point, no, Your Honor. And those are only the proactive remedies in the statute. The statute does not make reference to the ability to use it as a shield and as a permanent defense against situations like this where contractors can do damages that my client had no knowledge of prior to this action. As we, in this case, what we will be doing by allowing contractors to say, I provided a signed contractual work order in your insurance adjustment, the plaintiff, the defendant, will never see this document, has no idea what's in it. Let me ask you this. In count one, paragraph seven, it alleges said bid was in writing and directed to an independent claims adjuster, Rick Taka, whatever. Yes, Your Honor. Retained by or on behalf of defendant. For purposes of this motion, don't we have to accept that as true? Yes, Your Honor. He was retained on behalf of the defendant by the defendant's insurance company who is also now refusing to pay the full amount of the damages. Well, we cannot accept. I mean, you're telling us at this point she wasn't aware of the bid. That's a factual issue for purposes of summary judgment or trial. This is a motion to dismiss. Don't we have to accept that if her agent knows the details of it, that it's assumed she does? Are we at least infer she's aware of it? Yes, Your Honor. The court would infer that she was aware of it at this stage of the hearing. Okay. However, that still, I believe, does not excuse the violations of the plaintiff But you think, again, you can use this as a sword and a shield? Yes. Your Honor, it's very difficult to use this act as a sword. And it should only be used as a shield when a plaintiff fails to do so. You could file a counterclaim for actual damages. My client could file a counterclaim for actual damages, which would incur her greater attorney's fees and further lengthen the litigation that she already did not wish to be a part of. She only wished to have her parents come to her home and for it to be taken care of and for her to be able to return and not have to deal with any of this. Yet we are now two years deep in the litigation that she never bargained for, never wished to be a part of, and never would have been necessary had the plaintiff only complied with the simple procedures of the act. But it still troubles me. Your client takes the position that a homeowner that knew all about, assuming what you say is true, that there must be strict compliance with this, knew that she didn't get a brochure, could sit back and wait until a contractor finished all the work, and then say, I got you. I'm not paying you anything. Do you believe that that's permitted under the act? Your Honor, I don't believe that's permitted, because what you're saying there would be a similar case to Kay Miller v. McGinnis, where it was a real estate attorney with 39 years of experience, a person who absolutely knows the ins and outs of the Home Repair and Remodeling Act. My client has no legal experience, has no experience in the repair industry, had no idea about this statute. She shouldn't have any idea about the Home Repair and Remodeling Act. However, the plaintiff, this is a law that regulates his profession, and he should be aware of laws that regulate his profession. My client has someone else deal with issues she doesn't know about. That's why we have insurance companies. We have contractors. These people are aware of the issues. So you don't need a signed contract, and you don't need to have the pamphlet delivered, if the other side can show that she's done this in the past and knew about it, knew that these were the requirements. Your Honor, I think that would be a better case for denying the application of the act. However, I believe what that does, it gets us to the issue. It would be hard to get a right-line rule. Right, Your Honor. I believe there's a necessity for a right-line rule, because, as you stated, we're going to need constant appellate review of these cases. And as stated by the plaintiff, we have a plethora of factual scenarios that can occur under this act. That is why we need a right-line rule, because otherwise there will be no clarity. Every decision will be appealed. Every time it will be. What was substantial compliance? What happens when the contractor only gave a vague bid, and the plaintiff says it will cost X amount of dollars, and it doesn't have the materials and what was provided? Is there anything in the record to show that your client had absolutely no knowledge of what the act was about, didn't receive one of these brochures in the past or anything like that? Is there anything in the record right now about that? There's nothing in the record at this point, Your Honor, that she had never dealt with this before. Then was the trial court premature in granting the motion to dismiss? I don't believe so, Your Honor. At the time the trial court granted the motion to dismiss, Smith v. Bogart was the seminal case on this issue. And it was a right-line rule. Failure to comply with the act prevents recovery. That's it. So you are saying that you can sit back then and knowingly not have a brochure, and that would insulate you from any potential liability to take the contract? Not just the brochure, Your Honor. The unsigned contract of the work order. The brochure, as stated by the Second Circuit, in Artisan Design, to be billed, But you're saying the homeowner could do that? Yes, Your Honor, because it's easily preventable. All the plaintiff has to do is get a signature, cover his face. That argument is out the window. It can never be raised by a witness. And she can sit back and wait and have all the work done, the $77,000, the half million you can conjure up any scenario, hundreds of thousands of dollars worth of work, and then say, I got you. Yes, Your Honor, and that actually has occurred in these cases. Is it a harsh rule? Yes. Is it draconian? Yes, but it's easily preventable is the key, and that is why we can have a bright-line rule that, although harsh and draconian, is effective. It is judicially efficient. There is no need for the appellate court to hear every single home repair in a while. Could the contractor then file a quantum merit action? No, Your Honor, because that would defeat the purpose of the act. It's saying you can't recover on an oral contract, and you can't recover on a cancellation. Equity wouldn't allow them to come in and file a quantum merit when the other person knew what was going on? No, Your Honor, because it would undermine the purpose of the act. It's the same claim under a different name. They're asking for the same relief, and yet it's the same way. This claim would have been fine had they only complied with the act. And also in this case, that claim was waived by the plaintiff as it was not raised at the trial court level. As it should have been, yet was not. The plaintiff even filed an amended complaint after my office filed a motion to dismiss, pointing out all the inadequacies of the original complaint. There was plenty of times I had a quantum merit claim in this case. Yet quantum merit claims have also been denied on numerous circuits on the same issue. Yet recently, the Third and Fourth District have decided to contradict themselves. The only consistency in those cases is in the Third District and the opinions of Justice Littman, who at all times would hold to the bright-line agreement that failure to comply prevents recovery. And why would mechanic's lien not be applicable in the facts of this case? Your Honor, because the whole paranoid monarchy prevents that recovery because it states that there will be no recovery if you don't get the signed contract of work order. If you have the signed contract of work order, you wouldn't need a mechanic's lien. You have a signed contract of work order. You can have a mechanic's lien on an oral contract, can't you? Yes, you can, Your Honor. The point I'm stating is it wouldn't be necessary. The signed contract would hold up on its own. It would have stayed very clear. I have signed on to pay you for these actions. What's that have to do with whether or not you can file a mechanic's lien? I believe, Your Honor, it's the same as with quantum merit. You're allowing the same recovery under a different name. And it's therefore just avoiding the home apparent remodeling act and making it a useless piece of paper. And I don't believe that is what the legislature intended when they spent the time to debate out and write this law for people to be able to avoid it and to find numerous loopholes to go around. It defeats the purpose of the act, which is to increase consumer confidence and reduce the likelihood of disputes. But, again, back to my initial question, the remedies that you agree with me provided for by the act are two. The second one being you've got to show actual damages in filing a consumer fraud action, actual damages there. Could you not do that in the quantum merit? And could you not do that in a mechanic's lien? Yes, Your Honor, but I don't believe that was the intent of the legislature. The legislature wrote in those actions and don't always contemplate everything that we've ruled upon by the trial courts at this point. Whereas the trial courts now held that this statute can be used as a shield against these claims. And I believe that is the most effective and efficient rule that will reduce the amount of litigation, reduce the likelihood of disputes. Even though in a certain set of circumstances the homeowner could get a tremendous windfall? Yes, Your Honor, because with substantial compliance being effective, we are now encouraging deceptive practices on the part of contractors. Now these gentlemen will be allowed to show up with a document. It's unsigned. It's like, this is what I provided to the defendant previously. The defendant will argue that, no, they didn't, but a trial court can only make a prediction as to fact. Trial courts are in the best position to decide issues of fact, but no one's right 100 percent of the time. And now we are switching over to now the plaintiff is going to be the one receiving large windfalls. I'm not saying that all plaintiffs will be unscrupulous. This is all defendants will not be unscrupulous. However, it is going to allow that type of action to occur. The only way to prevent anyone from being unscrupulous in their actions is to comply with the plain language of the act, to get a signed contract to work with them. And we can avoid this entire situation from beginning to end. There will be a signed contract providing for all remedies by law, allowing the plaintiff to recover at that point. It's a simple procedure in a legislature-like and a simple procedure for it to be taken care of. Thank you, counsel. Any rebuttal? Just very briefly, Your Honor. I think it's exactly correct that the focus of this court's decision has to be where we're at here, and that is coming up on 619, where all the allegations of the complaint are accepted as true, where we should not be out with prejudice unless no set of facts could govern recovery. And I think the defendant's position is quite clear through the question of court. That it's all or nothing, that it has to be a bright line, that Smith v. Bogart should be the law of the land, and that's what the legislature intended, that if there is not absolute, 100 percent compliance with this act, the most scrupulous, the most honest contractor, whether he's doing this work for a real estate lawyer or another contractor or anybody else, or a justice on the Supreme Court of the state... We have to reach that. I mean, can't we look at just what the remedies are provided for in the statute? I think you're absolutely correct, Your Honor. The legislature simply did not say that. They did not, which could have been, nothing could have been simpler than to say, a contractor who fails to strictly comply with the terms of statute should be barred from any recovery. I mean, if that's what they intended, then they clearly could have said that. And I can't think, as I was listening to the argument here, I was trying to think of another statute, another situation which would be similar to that. I mean, you know, we've all, before this act, we all dealt with construction issues all the time, and in commercial construction, you know, a minor breach doesn't bar the, whether the contractor fully complied with everything in the contract or not, doesn't bar him from a million-dollar recovery on a commercial project because he used this material instead of that material on a $5,000 part of the job. And just the question itself almost dictates the answer. Courts aren't in the business, and I don't think the legislature is in the business of playing gotcha. And that's what Smith v. Bogart says, and that's what the defendant is arguing here. All this about she'd have to pay $20,000, she was unhappy. None of that was before the trial court on the 619 record. None of that was before this court on the 619 record. Let's bring it on as far as counterclaims, consumer fraud. Let's get to the facts. If he abused her, defrauded her, then he's not entitled to recovery under the Act, under the Consumer Fraud Act, she's entitled to a counterclaim. But let's find that out. Let's have a trial. Let's have her take a court. There's no way this court can affirm this decision without making an absolute right line exactly like Smith v. Bogart. Unless you document in your initial complaint that you filed, Mr. Contractor, that you have a signed itemized bid to the penny, unless you document proof that you delivered the consumer brochure, you're out of court. I don't want to hear anything else about whether you've got 39 years' experience, the homeowner, anything else about it, you're done. And that is not what the legislature said, and that certainly should not be a decision that would be encouraged or could, I mean, it would be an unprecedented departure from the common law and from court decisions as far back as we can all remember. Thank you. Thank you. Thank you, gentlemen, for your arguments and your briefs today. We'll take them at our advisement and get back with you in due course.